IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SAINT PAUL UNITED METHODIST CHURCH, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CASE NO. 3:11-CV-873-WKW |
| v. | ) | [WO] |
| | ) | |
| GULF STATES CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, INC., d/b/a CAMP ALAMISCO, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Two motions are before the court in this declaratory judgment action regarding Plaintiff's duty to defend Defendant in an underlying state-court action: (1) Plaintiff's Motion for Summary Judgment (Doc. # 54); and (2) Defendant's Motion for Leave to Amend Answer to Assert a Counterclaim (Doc. # 58). The motions have been fully briefed. For the reasons that follow, Plaintiff's summary judgment motion is due to be granted and Defendant's motion for leave to amend is due to be denied.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §§ 1332(a) and 2201(a). The parties do not contest personal jurisdiction or venue.

## II. FACTS AND PROCEDURAL HISTORY

The facts and procedural history, although familiar to the court and the parties, are recounted here to provide context for the rulings on the pending motions. Defendant Gulf States Conference Association of Seventh-Day Adventists, Inc. ("GSC") owns Camp Alamisco, which borders Lake Martin in Tallapoosa County, Alabama. GSC offers Camp Alamisco for rent to churches and other groups. Plaintiff Saint Paul United Methodist Church ("St. Paul") rented GSC's camp facilities for its 2010 week-long summer retreat. One of the activities that GSC provided for St. Paul during the camp session was "wave running," which involved the use of personal watercraft ("PWC").

This lawsuit arises from a PWC accident involving Jenna Hackaday, a member of St. Paul, while she was attending the 2010 summer retreat at Camp Alamisco. On the day of the accident, Ms. Hackaday, who was twenty-one years old at the time, was the rear passenger on a three-passenger, Sea-Doo PWC, driven by a Camp Alamisco employee. The driver of the PWC spun the PWC in an attempt to throw off Ms. Hackaday and the other passenger, and succeeded. When

2

ejected, Ms. Hackaday landed in the path of the PWC's jet propulsion nozzle, and a violent thrust of water caused severe injuries to Ms. Hackaday's vaginal and rectal cavities, including a ruptured ovary.

The present dispute is whether St. Paul has a duty to defend GSC in the underlying lawsuit Ms. Hackaday filed against GSC in state court.[1] This dispute implicates the Rental Agreement entered into between St. Paul and GSC. The Rental Agreement required St. Paul to indemnify and hold harmless GSC in certain circumstances and further required St. Paul to procure insurance for certain risks:

> INDEMNIFICATION
>
> User agrees to indemnify and hold Gulf States Conference Association of Seventh-day Adventists (or any of its employees, agents or officers) harmless against claims and liability of any kind (including any attorney fees and costs) arising out of injury or death to any person or persons or damage to any property occurring, in, upon or about the premises during user's occupancy or use.
>
> INSURANCE
>
> User [St. Paul] (at its expense) agrees to acquire and keep in full force during its use of the premises, comprehensive public liability and property damage insurance covering any and all claims for injuries to persons or property occurring in, upon or about the premises during user's occupancy or use. User shall furnish a complete copy of the insurance policy to Camp Alamisco.

(Rental Agreement, Ex. A to Compl.)

---

[1] The underlying state-court lawsuit is styled, *Hackaday v. Bombardier Recreational Prods., Inc.*, Civ. No. 2012-900899 (Mtg. Cnty. Cir. Ct., Ala., filed July 17, 2012) ("underlying action").

3

Invoking the Rental Agreement, GSC demanded a defense and indemnification from St. Paul with respect to "any and all claims asserted by Ms. Hackaday" (Doc. # 1, ¶ 18), but St. Paul refused. St. Paul then filed this action on October 12, 2011, seeking a declaratory judgment that the Rental Agreement does not impose on St. Paul a duty to defend or indemnify GSC in the underlying action. GSC responded with a motion to dismiss, which in pertinent part challenged the ripeness of St. Paul's declaratory judgment action as it pertained to the duty to indemnify (but not the duty to defend). In an Order entered on September 28, 2012, the court found that any duty of St. Paul to indemnify GSC would arise only if GSC became legally obligated to pay damages to Ms. Hackaday in the underlying action. Although Ms. Hackaday had by that point filed the underlying action, it was pending. Accordingly, the court found that the declaratory judgment action was not ripe as to the indemnification issue and granted GSC's motion to dismiss.

On April 22, 2013, after obtaining an extension of time (Doc. # 29), GSC filed a motion for summary judgment, contending that the Rental Agreement's indemnity provision also required St. Paul to defend it in the underlying action. The motion presented a purely legal issue. A prior Memorandum Opinion and Order entered on June 5, 2013, analyzed the Rental Agreement's contractual provisions, including the indemnity provision. The court observed that the word

4

"defend" did not appear in the Rental Agreement's indemnity provision and agreed with St. Paul that neither the indemnity provision nor any other provision in the Rental Agreement "require[d] St. Paul to defend GSC against claims arising out of personal injuries occurring at Camp Alamisco during St. Paul's use of the camp." (Doc. # 49, at 6.)  It concluded that "St. Paul cannot be required to defend GSC in the underlying action if it has not contractually agreed to do so, and the 'whole of the' Rental Agreement reveals no such agreement." (Doc. # 49, at 7 (citation omitted).)  Because the Rental Agreement did not embody any terms imposing on St. Paul a duty to defend GSC in the underlying action, GSC's motion for summary judgment was denied.

The denial of GSC's summary judgment motion left the case in somewhat of an unusual procedural posture.  Even though no conceivable reason existed at that time for this declaratory judgment action to proceed to a non-jury trial on the duty-to-defend issue, St. Paul had not filed a cross-motion for summary judgment.

The procedural posture of this action was the subject of discussion at the off-the-record pretrial conference that occurred on June 6, 2013.  At this conference, defense counsel indicated that, if explored further, the evidence may reveal that St. Paul's insurance policy required by the insurance provision of the Rental Agreement gives rise to St. Paul's duty to defend.  The culmination of these

5

discussions resulted in the court's granting leave to St. Paul to file a summary judgment motion by July 8, 2013 (Doc. # 52), which St. Paul did (Doc. # 54).

In its summary judgment motion, St. Paul acknowledges the court's prior ruling on GSC's summary judgment motion that "[t]he Rental Agreement, which includes no provision with respect to a duty to defend, does not impose on St. Paul a duty to defend GSC in the underlying action." (Doc. # 54, at 5 (citing Mem. Op. & Order 8).) St. Paul's summary judgment motion focuses, however, on the issue that arose at the pretrial hearing, namely, "whether the documents delivered to GSC pursuant to the . . . [i]nsurance provision of the [R]ental [A]greement impose a duty to defend." (Doc. # 54, at 5.) That motion relies, in part, on the relevant insurance policy, the certificate of insurance, and the affidavit of Jessica Jenkins, the account manager of the insurance agency which had issued St. Paul the insurance policy. St. Paul argues that because the insurance policy does not contain an endorsement making GSC an additional insured under the policy and because the certificate of insurance confers no rights on GSC, St. Paul has no duty to defend GSC in the underlying action on the basis of the insurance documents. (Doc. # 54, at 5–9.)

In response, GSC moved to reopen discovery under Federal Rule of Civil Procedure 56(d) for the limited purpose of permitting GSC to depose Ms. Jenkins to discover the basis for her "interpretations of the insurance policy and certificate

now at issue." (Doc. # 56.) The court granted that motion and extended the time for GSC to respond to St. Paul's summary judgment motion. After Ms. Jenkins's deposition, which took place on August 5, 2013, GSC filed its response to St. Paul's summary judgment motion on August 12. Its principal argument is that St. Paul's summary judgment motion is based on a claim that is not in the Complaint. Significantly, GSC concedes that if St. Paul is permitted to proceed on this claim, then "St. Paul is entitled to summary judgment on the issue of whether a duty to defend exists under the Insurance provision of the Rental Agreement." (Doc. # 59, at 4.)

Also on August 12, which was seven months after the expiration of the January 4, 2013 deadline for amending the pleadings, GSC filed a motion for leave to amend its answer to assert a counterclaim for breach of contract against St. Paul. The proposed counterclaim alleges that "St. Paul breached the terms of the Rental Agreement by failing to provide insurance for 'any and all claims for injuries to person or property' during St. Paul's use of Camp Alamisco." (Doc. # 58-1, at 5 (Counterclaim).) It alleges further that "St. Paul failed to provide insurance for Hackaday's 'claims for injuries' described in Hackaday's lawsuit." (Doc. # 58-1, at 5.) GSC alleges that, as a result of the breach, it "has incurred" and "will incur" attorney's fees and expenses in the defense of Ms. Hackaday's lawsuit and that it

does not have the "benefit of insurance as St. Paul contracted to provide." (Doc. # 58-1, at 5.) The parties dispute whether GSC's motion is supported by good cause.

## IV. DISCUSSION

The pending motions present four issues for resolution. The first issue concerns the lack of finality with respect to the denial of GSC's summary judgment motion. The second issue – raised in St. Paul's summary judgment motion – is whether the insurance policy St. Paul maintained pursuant to the insurance provision of the Rental Agreement and the certificate of insurance provided to GSC impose on St. Paul a duty to defend GSC in the underlying state-court lawsuit. The third issue is whether the claim raised in St. Paul's summary judgment motion is properly before the court. The fourth issue is whether GSC's motion to amend its answer to add a counterclaim is timely. These issues are addressed in turn below.

**A.   GSC's Summary Judgment Motion**

As an initial matter, finality is needed with respect to the issue of law addressed in connection with GSC's earlier-filed summary judgment motion. In a prior Memorandum Opinion and Order, the court rejected GSC's position that the Rental Agreement's indemnity provision required St. Paul to defend it in the underlying state-court action. The court observed that any mention of a duty to defend was notably absent in the indemnity provision and, for that matter, in any

provision of the Rental Agreement; thus, the conclusion was clear: "The Rental Agreement, which includes no provision with respect to a duty to defend, d[id] not impose on St. Paul a duty to defend GSC in the underlying action."[2] (Doc. # 54, at 5 (citing Mem. Op. & Order 8).) Judgment was not entered because St. Paul, in whose favor this issue of law resolved, had not filed a cross-motion for summary judgment.

As a result of the discussions at the pretrial hearing and to facilitate final judgment, the court granted St. Paul leave to file a summary judgment motion, and St. Paul did. St. Paul's motion does not expressly move for summary judgment on whether the indemnity provision of the Rental Agreement requires St. Paul to defend GSC in the underlying action. Both St. Paul and GSC agree, however, that the court has resolved this legal issue in St. Paul's favor. (*See, e.g.*, Doc. # 59, at 2,

---

[2] Two points of clarification are helpful here. First, the prior Memorandum Opinion and Order's summary judgment analysis was confined to the terms of the Rental Agreement. At that time, GSC had not argued that the insurance policy, which the Rental Agreement's insurance provision required St. Paul to maintain, imposed on St. Paul a duty to defend GSC in the underlying action, and the insurance policy and related documents were not part of the summary judgment record. Hence, while the ruling – that the whole of the Rental Agreement did not impose upon St. Paul a duty to defend – necessarily implied that a duty to defend was not embodied in the terms of the Rental Agreement's insurance provision, the Memorandum Opinion and Order espoused no opinion – either expressly or impliedly – as to whether the insurance policy and certificate of insurance imposed on St. Paul a duty to defend GSC in the underlying action.

Second, to avoid confusion and to separate the issues, in the following discussion, the court will refer to its prior summary judgment ruling as resolving whether St. Paul has a duty to defend GSC in the underlying action pursuant to the Rental Agreement's indemnity provision and will refer to the new issue as whether St. Paul has a duty to defend GSC pursuant to the insurance policy maintained pursuant to the Rental Agreement's insurance provision.

in which GSC acknowledges that "[t]his Court has held that St. Paul does not have a duty to defend arising from the Indemnity provision of the Rental Agreement at issue.").) The Eleventh Circuit has recognized that "where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided." *Artistic Ent'mt, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003).

The issue of St. Paul's duty to defend under the indemnity provision of the Rental Agreement is a legal issue, and the parties fully briefed that issue in connection with GSC's summary judgment motion. Moreover, in the additional briefing filed after summary judgment was reopened, neither party has presented any reason why summary judgment should not be entered in St. Paul's favor on this issue given the present posture of this case, and the court can conceive of none. Accordingly, summary judgment will be entered in St. Paul's favor on the issue of whether the indemnity provision of the Rental Agreement obligates St. Paul to defend GSC in the underlying action. This does not end the discussion, however.

B.  **St. Paul's Summary Judgment Motion**

St. Paul's summary judgment motion focuses on the issue that arose at the pretrial hearing, namely, whether the insurance policy St. Paul maintained pursuant to the insurance provision of the Rental Agreement imposes on St. Paul a duty to defend GSC in the underlying action. (Doc. # 54, at 5.) GSC readily concedes

that, based upon that insurance policy, "St. Paul is entitled to summary judgment on the issue of whether a duty to defend exists under the [i]nsurance provision of the Rental Agreement."  (Doc. # 59, at 4.)  GSC argues, though, that whether a duty to defend exists under the insurance provision of the Rental Agreement (as opposed to the indemnity provision) is a new theory that St. Paul did not plead in its Complaint and that cannot be raised for the first time in a summary judgment brief.  This threshold pleading issue will be addressed first.

GSC is correct that St. Paul cannot amend its Complaint "through argument in a brief opposing summary judgment," *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013), but GSC's argument nonetheless is not persuasive.  The insurance provision of the Rental Agreement is not new to this litigation.  To begin with, this litigation commenced as a result of GSC's demand that St. Paul, "under the terms of the Camp Use Rental Agreement, defend and indemnify [GSC] from any claim asserted by Hackaday."  (Answer ¶ 18.)  GSC did not limit its demand for a defense and indemnity to the indemnity provision of the Rental Agreement, and a fair reading of the Complaint likewise does not restrict relief to a declaration that the Rental Agreement's indemnity provision (and that provision alone) does not impose on St. Paul a duty to defend GSC.  It is true that the Complaint's allegations concentrate more heavily on invalidating the Rental Agreement's indemnity provision so as to obtain a

11

declaration that St. Paul has no duty to indemnify GSC, but the insurance provision is not inconsequential to the allegations. The Complaint highlights equally the "Insurance and Indemnity Provisions" of the Rental Agreement (Doc. # 1, ¶ 10) and incorporates the Rental Agreement in its entirety (Doc. # 1, Ex. A). Additionally, the Complaint asks for a declaration not only with respect to St. Paul's duty to indemnify, but also as to its duty to defend. And that request is not limited to a declaration that the indemnity provision alone does not provide for a duty of defense. (*See* Doc. # 1, at 9 (requesting the court to "[d]eclare that St. Paul UMC has no duty to defend Defendant Camp Alamisco in the Underlying Claim").)

Similarly, GSC did not limit its arguments in its summary judgment motion to the Rental Agreement's indemnity provision. In its brief, GSC quoted the insurance and indemnity provisions and emphasized St. Paul's awareness of both provisions. (Doc. # 32, at 3.) Additionally, in its summary judgment arguments, GSC recognized the intertwined relationship between these provisions. Namely, GSC relied on the insurance provision's requirement that St. Paul maintain public liability and property damage insurance to bolster its argument with respect to the validity of the indemnity provision. GSC's arguments that the Complaint provides no notice implicating a duty to defend arising from the insurance provision are not convincing. In short, the Complaint "give[s] [GSC] fair notice of what the . . .

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted).

Perhaps more significantly, GSC's present contention is perplexing because it is inconsistent with what took place at the pretrial conference. As St. Paul correctly points out, GSC, not St. Paul, interjected the issue, arguing at the June 6, 2013 pretrial conference that, although its summary judgment motion had been denied, "the certificate of insurance, as implicated by the insurance provision of the Rental Agreement, could create a duty to defend." (Doc. # 61, at 2.) GSC has not denied that it raised this issue at pretrial and obtained permission to explore the issue. Neither at the pretrial conference nor in July 2013 when it successfully moved to reopen discovery did GSC argue that this "new theory" was not properly before the court. (Doc. # 56, ¶ 6.) Curiously, now that the parties have delved deeper into the insurance issue and GSC has conceded that the insurance policy does not require St. Paul to defend it in the underlying action, GSC argues that the issue is improperly before the court. Having provided no explanation for why it voluntarily litigated this issue, after having raised it, GSC should not now complain that the Complaint does not encompass such a claim. *Cf.* Fed. R. Civ. P. 15(b)(2) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). The court alternatively will treat the issue of whether the insurance policy

13

maintained by St. Paul pursuant to the Rental Agreement's insurance provision imposes a duty to defend on St. Paul as a properly pleaded claim before the court based on the parties' consent.

GSC concedes that the merits of the claim must be resolved in St. Paul's favor. Based upon GSC's concession, summary judgment is due to be entered in favor of St. Paul on the claim for a declaratory judgment that the insurance policy maintained by St. Paul pursuant to the Rental Agreement's insurance provision imposes no duty upon St. Paul to defend GSC in the underlying action.[3]

## C.  GSC's Motion for Leave to Amend Answer to Assert a Counterclaim

GSC's motion to amend its answer to assert a breach-of-contract counterclaim comes almost two years after the filing of this action and seven months after the expiration of the January 4, 2013 deadline for amending the pleadings. The Eleventh Circuit has held that where a motion to amend the pleadings is filed after the scheduling order's deadline, the movant "must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys. Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (citing Fed. R. Civ. P. 15(a), 16(b)). "If we considered only

---

[3] There still are substantial issues left for future resolution, including the potential issue of indemnification under the Rental Agreement, which is not yet ripe for judicial resolution, and any breach-of-contract issues (*see infra* Part C). With respect to the issues resolved in this litigation, GSC has saddled itself with a poorly drafted Rental Agreement that likely will give life to future litigation.

14

Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.*

To establish good cause under Rule 16(b), "the party seeking [leave of court] must have been diligent." *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008). "'If a party was not diligent, the good cause inquiry should end.'" *Sosa*, 133 F.3d at 609 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Moreover, although Rule 15(a) provides that "leave shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), justice does not require an amendment where "there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties," or where the amendment would be futile. *Local 472 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting v. Ga. Power Co.*, 684 F.2d 721, 724 (11th Cir. 1982) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

GSC contends that, despite its diligent discovery efforts, it did not learn of "[t]he existence of a breach of contract claim . . . until Ms. Jenkins's deposition" on August 5, 2013, and that thereafter it promptly filed a motion to amend on August 12. (Doc. # 58, at 4.) St. Paul counters that GSC's reliance on facts garnered during the recent deposition of Ms. Jenkins does not amount to good cause. Namely, St. Paul represents that on February 21, 2012, during discovery,

15

GSC itself produced the certificate of insurance signed by Ms. Jenkins and that St. Paul previously had produced a complete copy of the relevant insurance policy on December 14, 2011.  (Doc. # 60, at 3 & Ex. A.)  St. Paul further points out that counsel for GSC questioned Grace Bailey, St. Paul's 30(b)(6) representative, about the Rental Agreement's insurance requirement when it deposed her on April 10, 2013 (*see* Bailey's Dep. 34–35, 38–39, 114), that counsel for GSC "raised the insurance certificate as an avenue to a duty to defend during the pretrial conference of June 6, 2013," and that the "Complaint specifically sets out the insurance provision at issue, thereby inserting it into the litigation where it has remained throughout."  (Doc. # 60, at 3.)

The court agrees that GSC has not demonstrated good cause to permit the amendment at this late date.  As represented by St. Paul, GSC had the certificate of insurance in its possession no later than February 21, 2012, which was more than ten months prior to the January 4, 2013 deadline for amending the pleadings.  The certificate of insurance provides that "[i]f the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  A statement on this certificate does not confer rights to the certificate holder in lieu of such

endorsement(s)."[4]  (Ex. A to Doc. # 60 (Certificate of Insurance).)  Even a limited review of the certificate of insurance and the insurance policy, the latter of which GSC already had in its possession, would have revealed that GSC was not named as an additional insured on St. Paul's insurance policy and that the policy was not endorsed to include GSC as an additional insured.  At the latest, on February 21, 2012, with the exercise of due diligence, GSC should have known that it had no direct benefits under the insurance policy and, thus, that the insurance policy conferred no right to a duty of defense from St. Paul.   GSC does not explain why it needed to take Ms. Jenkins's deposition to learn those facts when it already had the relevant insurance documents in hand. Finally, because there remain controversies between the parties that likely will result in future litigation, the court finds no prejudice to GSC in denying the motion.

Based on the foregoing, GSC's motion for leave to amend is answer its due to be denied.

---

[4] The certificate of insurance further contains a "disclaimer" that it "does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon."  (Ex. A to Doc. # 60.)

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)  Summary judgment is GRANTED in St. Paul's favor on its claim for a declaratory judgment that St. Paul has no duty to defend GSC in the underlying action pursuant to the indemnity provision of the Rental Agreement;

(2)  Plaintiff's Motion for Summary Judgment (Doc. # 54) is GRANTED on its claim for a declaratory judgment that the insurance policy St. Paul maintained pursuant to the Rental Agreement's insurance provision imposes on St. Paul no duty to defend GSC in the underlying action; and

(3) Defendant's Motion for Leave to Amend Answer to Assert a Counterclaim (Doc. # 58) is DENIED.

A separate judgment will be entered.

DONE this 31st day of January, 2014.

                                                /s/ W. Keith Watkins
                                   CHIEF UNITED STATES DISTRICT JUDGE